Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
(214) 855-7500

*Counsel for the Advisors*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Debtor. | § § § § § § § § | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. and NEXPOINT ADVISORS, L.P.,<br><br>Defendants. | § § § § § § § § § § § § § § | Adv. No. 21-03010-sgj |

**RESPONSE TO DEBTOR'S OBJECTION TO APPLICATION FOR
ADMINISTRATIVE CLAIM OF HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P.**

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

NOW COME Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. (the "Advisors") and file this *Response to Debtor's Objection to Application for*

*Administrative Claim of Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.*, respectfully stating as follows:

## I. SUMMARY

1. In response to the Advisors' Admin Claim, the Debtor asserts only waiver and the voluntary payment rule. But neither applies. The parties' contracts contain enforceable nonwaiver provisions, and the Advisors acted promptly to assert and protect their rights after becoming aware they had overpaid the Debtor. The voluntary payment rule does not apply to statutory claims or contract claims, nor does it apply when there is a mistake of fact. Neither of these defenses bars the Admin Claim, and the Debtor's other objections amount to irrelevant *ad hominem* attacks that lack any real substance. The Court should overrule the Debtor's objection and grant the Admin Claim.

## II. BACKGROUND

2. On January 24, 2021, the Advisors filed their *Application for Allowance of Administrative Expense Claim* (Bankr. Dkt. No. 1826, the "Admin Claim").

3. On February 22, 2021, the Court entered its *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* (Dkt. No. 1943, the "Confirmation Order"), pursuant to which it confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "Plan").

4. Under the Plan and Confirmation Order, the Administrative Expense Claims Bar Date is forty-five days after the Plan's Effective Date. The Effective Date occurred on August 11,

2021, *see* Dkt. No. 2700, so the Administrative Expense Claims Bar Date did not occur until September 27, 2021.[1]

5.  On May 5, 2021, Highland Capital Management, L.P. (the "Debtor") filed its *Debtor's Objection to Application for Administrative Claim of Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.* (Bankr. Dkt. No. 2274, the "Objection").

6.  The Admin Claim is based on overpayments the Advisors made to the Debtor under those certain shared services agreements and payroll reimbursement agreements (collectively, the "Agreements"). In its Objection, the Debtor insinuates the Advisors were aware of the overpayments for more than six months before filing the Admin Claim. But that is not factually accurate. The issue did not crystalize until late November 2020. Upon discovering the overpayments and realizing their magnitude, the Advisors promptly ceased making payments under the Agreements. The Advisors also attempted to address the issue with the Debtor.

7.  On December 1, 2021, Debtor employee David Klos acknowledged the overpayments under the payroll reimbursement agreements in particular:

> These have not changed since BK, which given the changes in headcount you point out along with not paying insider bonus compensation, has increased the profitability of the contracts from HCMLP's perspective.

Unsurprisingly, the Advisors' attempts to negotiate with the Debtor went nowhere.

8.  On or about March 1, 2021, following termination of the Agreements, the Debtor and the Advisors entered into that certain *Shared Resources Agreement*, pursuant to which they expressly preserved the Admin Claim:

> For the avoidance of doubt, each Party reserves all rights it has, or may have, including all rights to pursue and defend any claims and/or causes of action, with respect to any matter, agreement, or understanding not explicitly addressed in this Agreement. The Parties expressly reserve all rights with respect to amounts asserted

---

[1] The forty-fifth day after August 11, 2021 was Saturday September 25, 2021. Under Fed. R. Bankr. P. 9006, the Administrative Expense Claims Bar Date occurred the next business day.

in connection with the NexPoint Parties' administrative claim, including, without limitation the NexPoint Parties' right to amend such claim to assert additional or lesser amounts, including with respect to the post-petition amounts owed under the Shared Services Agreements; provided, that under no circumstances shall such claim or claims give rise to any right of offset against any amounts payable hereunder, the rights of HCMLP to object to such claim as well as all rights and defenses in connection with all pending and potential Adversary Proceedings between the Parties. All such claims and defenses are expressly preserved for future resolution by the court.

9. The shared services agreement between the Debtor and NexPoint contains the following nonwaiver clause:

> The performance of any condition or obligation imposed upon any Party may be waived only upon the written consent of the Parities. Such waiver shall be, limited to the terms thereof and shall not constitute a waiver of any other condition or obligation of the other Party. Any failure by any Party to enforce any provision shall not constitute a waiver of that or any other provision or this Agreement.

10. The other three Agreements all contain the following nonwaiver clause:

> No failure on the part of any Party to exercise or delay in exercising any right hereunder will be deemed a waiver thereof, nor will any single or partial exercise preclude any further or other exercise of such or any other right.

11. All of the Agreements contain provisions stating they are governed by and shall be interpreted under the laws of the State of Texas.

### III.    ARGUMENT & AUTHORITIES

**A.    THE ADVISORS HAVE NOT WAIVED THE ADMIN CLAIM**

12. The Debtor claims the Advisors waived the Admin Claim. But this is wrong for two reasons. First, the Agreements contain enforceable nonwaiver provisions. Second, even if they did not, the Advisors plainly never manifested an intent to waive their rights.

   **i.    The Agreements Contain Enforceable Nonwaiver Provisions**

13. "Given Texas's strong public policy favoring freedom of contract, there can be no doubt that, as a general proposition, nonwaiver provisions are binding and enforceable." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017). True, "a party's rights under a

nonwaiver provision my indeed be waived expressly or impliedly." *Id.* at 482-83.  But in order to waive a nonwaiver provision, "there must, at a minimum, be some act inconsistent with its terms." *Id.* at 474.  More specifically, "'[w]hile waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right.'" *Id.* at 485 (quoting *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005)).  Simply "engaging in the very conduct disclaimed as a basis for waiver is insufficient as a matter of law to nullify the nonwaiver provision in the parties' … agreement." *Id.* at 484-85.

14. The Debtor has not identified any conduct unequivocally inconsistent with enforcing the nonwaiver provisions in the Agreements, as opposed to conduct allegedly inconsistent merely with asserting the Admin Claim itself.  A recent case highlights this critical distinction.  *In re United Servs. Auto. Ass'n*, No. 03-19-00292-CV, 2020 Tex. App. LEXIS 10203 (Tex. App.—Austin Dec. 23, 2020) ("*USAA*").  Insured homeowners asserted that their insurer's delay invoking an appraisal clause "should be viewed as waving its rights under the nonwaiver provision as well as waiving its rights under the appraisal clause." *Id.* at *6.  "However," the Court held, "even assuming that USAA's delay amounted to intentional conduct inconsistent with claiming its rights to enforce the appraisal agreement, it does not follow that such behavior was also 'inconsistent with claiming the right to enforce the nonwaiver agreement.'" *Id.* at *6-7 (quoting *Shields*, 526 S.W.3d at 485).  The same is true here.  None of the Advisors' alleged conduct is unequivocally inconsistent—or even moderately inconsistent—with enforcing the Agreements' nonwaiver provisions.  Such provisions are enforceable and bar the Debtor's waiver argument.

### ii.    The Advisors Never Intended to Waive their Rights

15. Even if the Agreements did not contain enforceable nonwaiver provisions, there is no basis for the Debtor to argue the Advisors waived the Admin Claim. Waiver has three elements:

"(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver "is ordinarily a question of fact, dependent on things done and said, and the burden of proof is on the party relying on waiver." *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. App.—Amarillo 1981) (citations omitted). Silence or inaction may be evidence of waiver, but it must be "coupled with knowledge of the known right, for such an unreasonable period of time as to indicate an intention to waive the right. *Id.*

16. The Advisors discovered the overpayments under the Agreements in late November 2020. They tried to engage the Debtor, but the Debtor refused to listen, even though at least one Debtor employee acknowledged the problem. In January, the Advisors filed the Admin Claim, eight months before the Court-ordered deadline to do so. There is simply no basis under these facts to conclude the Advisors actually intended to relinquish their rights under the Agreements. Indeed, the facts plainly show otherwise.

**B. THE VOLUNTARY PAYMENT RULE DOES NOT APPLY**

17. Next, the Debtor argues the voluntary payment rule bars the Admin Claim. But this is wrong for two reasons as well. First, the voluntary payment rule does not apply to breach of contract and other similar claims. Second, the voluntary payment rule only applies when there is a mistake of law, not a mistake of fact.

**i. The Voluntary Payment Rule Does Not Apply to Breach of Contract**

18. Historically, the voluntary payment rule was "a defense to claims asserting unjust enrichment; that is, when a plaintiff sues for restitution claiming a payment constitutes unjust enrichment, a defendant may respond with the voluntary-payment rule as a defense." *See BMG Direct Mktg. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2004). But "[a]lthough the voluntary-payment

rule has been applied, at times, in both private and public contexts, other legal and statutory remedies have evolved over time to supplant the rule's application in many of these contexts." *Id.* at 770. "Thus, although the voluntary-payment rule may have been widely used by parties and some Texas courts at one time, its scope has diminished as the rule's equitable policy concerns have been addressed through statutory or other legal remedies." *Id.* at 771. "Like other equitable claims and defenses, an adequate legal remedy may render equitable claims of unjust enrichment and equitable defenses of voluntary-payment unavailable." *Id.* at 770. While not completely abrogated, the rule today has only "limited application in Texas jurisprudence." *Id.* at 771.

19.  As an initial matter, an administrative expense claim is a statutory remedy, and the statute should govern. Moreover, Courts have expressly held that the voluntary payment rule does not apply to breach of contract claims. *Lopez v. Bailon*, No. 07-14-00442-CV, 2016 Tex. App. LEXIS 8458, *10 (Tex. App.—Amarillo Aug. 4, 2016) ("The voluntary payment defense does not apply to a simple breach of contract action."); *see BMG Direct Mktg.*, 178 S.W.3d at 775 ("It is true that, to the extent the subject matter of Peake's claim is covered by the parties' contract, the rule would not apply."). The Advisors have not submitted merely a common-law unjust enrichment claim. They have asserted a claim under the Bankruptcy Code and written contracts. Under these circumstances, the voluntary payment rule does not apply.

    **ii.**    <u>**The Voluntary Payment Rule Does Not Apply to Mistakes of Fact**</u>

20.  Long ago, the Texas Supreme Court "stated the common-law voluntary-payment rule as follows: 'Money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook ***the law*** as to his liability.'" *BMG Direct Mktg.*, 178 S.W.3d at 768 (Tex. 2004) (quoting *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (Tex. 1951) (quoting 40 AM. JUR. § 205 (1942))) (emphasis added). The rule does not

apply to mistakes of fact. *See Central Austin Apts., LLC v. UP Austin Holdings, LP*, No. 03-13-00080-CV, 2014 Tex. App. LEXIS 10357, *44 n.28 (Tex. App.—Austin Dec. 8, 2014. *rev'd on other grounds*) ("The voluntary-payment rule does not bar restitution based on mutual mistake of fact."). Indeed, "for the voluntary-payment rule to apply, a person must pay 'with full knowledge of all the facts.'" *BMG Direct Mktg.*, 178 S.W.3d at 772.

21. Here, the Advisors were not aware of all the facts until late November 2020. Upon becoming aware, they immediately ceased payments under the Agreements. Under the circumstances, the voluntary payment rule does not apply.

## IV.    RESERVATION OF RIGHTS

22. On December 17, 2021, the Court entered its *Order Approving Stipulation Regarding Second Amended Scheduling Order* (Adv. Dkt. No. 56, the "Stipulated Order").

23. Under the Stipulated Order, *inter alia*, the following deadlines apply:

   a. "Responses to the Objection ('Responses') shall be filed on or before December 22, 2021, unless otherwise agreed in writing by the Parties."

   b. "Depositions shall be scheduled and concluded on or before January 20, 2022, unless otherwise agreed in writing by the Parties."

   c. "Any Party wishing to file a trial brief shall file and serve the same on or before February 1, 2022."

24. Accordingly, considering the procedural posture of this adversary proceeding and the fact that discovery is ongoing, the Advisors reserve all their rights, including the right to file a comprehensive trial brief and to put on their case at trial consistent with applicable notice-pleading standards.

## V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Advisors respectfully request that the Court enter an order (I) granting and allowing the Admin Claim; (II) overruling the Debtor's

Objection; and (III) providing the Advisors such other and further relief to which they are entitled at law or in equity.

RESPECTFULLY SUBMITTED this 22nd day of December, 2021.

MUNSCH HARDT KOPF & HARR P.C.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
(214) 855-7500
drukavina@munsch.com
jvasek@munsch.com

*Counsel for the Advisors*

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on December 22, 2021, true and correct copies of the foregoing document were served on the following recipients via the Court's CM/ECF system.

Zachery Z. Annable on behalf of Plaintiff Highland Capital Management, L.P.
zannable@haywardfirm.com

Matthew A. Clemente on behalf of Interested Party Committee of Unsecured Creditors
mclemente@sidley.com, matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwomey@sidley.com

Juliana Hoffman on behalf of Interested Party Committee of Unsecured Creditors
jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com

A. Lee Hogewood, III on behalf of Defendant Highland Capital Management Fund Advisors, L.P.
lee.hogewood@klgates.com, haley.fields@klgates.com;matthew.houston@klgates.com;mary-beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com

A. Lee Hogewood, III on behalf of Defendant NexPoint Advisors, L.P.
lee.hogewood@klgates.com, haley.fields@klgates.com;matthew.houston@klgates.com;mary-beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com

Paige Holden Montgomery on behalf of Interested Party Committee of Unsecured Creditors
pmontgomery@sidley.com, txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;crognes@sidley.com;ebromagen@sidley.com;efilingnotice@sidley.com

Davor Rukavina on behalf of Defendant Highland Capital Management Fund Advisors, L.P.
drukavina@munsch.com

Davor Rukavina on behalf of Defendant NexPoint Advisors, L.P.
drukavina@munsch.com

Julian Preston Vasek on behalf of Defendant Highland Capital Management Fund Advisors, L.P.
jvasek@munsch.com

Julian Preston Vasek on behalf of Defendant NexPoint Advisors, L.P.
jvasek@munsch.com

/s/  Davor Rukavina
Davor Rukavina, Esq.