PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
       jmorris@pszjlaw.com
       gdemo@pszjlaw.com
       hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Adversary Proceeding No. |
| | § | 21-03010-sgj |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.



|  |  |
|---|---|
| Plaintiff, | § |
| | § |
| vs. | § |
| | § |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; NEXPOINT ADVISORS, L.P., | § |
| | |
| Defendants. | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S REPLY IN FURTHER SUPPORT OF DEBTOR'S OBJECTION TO APPLICATION FOR ADMINISTRATIVE CLAIMS OF HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P.**

Highland Capital Management, L.P., the reorganized debtor and the plaintiff in the above-referenced adversary proceeding ("Highland"), hereby files this reply (i) in opposition to the Advisors' *Response to Debtor's Objection to Application for Administrative Claim of Highland Capital Management Fund Advisors, L.P., and NexPoint Advisors, L.P.* [Adv. Docket No. 49] (the "Response") and (ii) in further support of *Debtor's Objection to Application for Administrative Claim of Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.* [Docket No. 2274] (the "Objection").[2] In furtherance thereof, Highland states as follows:

**PRELIMINARY STATEMENT**

1. On January 24, 2021, on the eve of Highland's confirmation hearing and with virtually no prior notice, the Advisors filed their Application for a $14 million administrative priority claim on account of alleged overpayments made to Highland (the "Alleged Claim"). The Application has no merit and ignores or distorts critical facts. Highland performed under the Agreements in accordance with their terms and past practice, including prepetition practice, and the Advisors received exactly what they bargained for. Even assuming the Advisors could meet their burden of proof and establish a breach (which they cannot), the Alleged Claim has been

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Objection.

waived, is barred by the "voluntary payment" rule, is facially and incredibly inflated, and is subject to setoff.

2.  A quick review of the Advisors' evolving story and its implications shows the lack of credibility in the Application and the Response:

- The Advisors contend that "beginning around July 2020, Mr. Seery directed the Debtor to cease providing services to the Advisors as otherwise contemplated under the SSAs and PRAs." Application ¶ 16. This allegation is facially absurd because it would have resulted in the immediate and catastrophic default by the Advisors under their agreements with their retail fund clients, something that obviously never occurred.[3]

- Despite alleging that Highland ceased providing services in July 2020, the Advisors incredibly and inexplicably seek "damages" going back eight months earlier—to the Petition Date—before anyone in the Highland case had even heard of Mr. Seery.

- After Highland discovered written evidence that the Advisors assured the Retail Boards in October 2020 that Highland was performing under the Agreements, the Advisors were forced to change their story, now contending that they did not discover the overpayments until November 2020. Response ¶ 16.

3.  As will be proven at trial, the Advisors will fail to meet their burden of proving Highland breached the Agreements. Instead, the evidence will show that, with full knowledge of the services being provided by Highland, the Advisors continued to timely make all payments required under the Agreements until weeks after Mr. Dondero was forced to resign in October 2020. At that time, and despite assuring the Retail Boards that Highland was performing under the Agreements, the Advisors concocted their Alleged Claim, and Mr. Dondero directed the Advisors to stop paying *all* amounts due and owing to Highland, including those owed under the Agreements – not because of the Alleged Claim, but as part of his broader strategy to burn Highland down.

---

[3] It is beyond dispute that the Advisors did not have the ability to service their retail funds without Highland's support during this period of time.

4. The Objection should be sustained, and the Court should enter a judgment in Highland's favor for all unpaid amounts due and owing under the Agreements.

## RELEVANT BACKGROUND

**A.     Highland Complied with the Agreements**

5. On February 8, 2013, Highland and HCMFA executed the HCMFA SSA. On January 1, 2018, Highland and NexPoint executed the NexPoint SSA (together with the HCMFA SSA, the "Shared Services Agreements").

6. On May 1, 2018, Highland and NexPoint executed the NexPoint PRA and Highland and HMCFA executed the HCMFA PRA (together with the NexPoint PRA, the "Reimbursement Agreements").

7. James Dondero owned and/or controlled Highland, HCMFA, and NexPoint (i) when the Shared Services Agreements and Reimbursement Agreements (together, the "Agreements") were entered into, and (ii) at all times from the date of execution of the Agreements through January 9, 2020, when he ceded control of Highland. Mr. Dondero has continued to control the Advisors through the present time.

8. As will be established at trial, and consistent with its prepetition practice, Highland provided the services required by the Agreements following the Petition Date.[4] Despite this, the Advisors filed the Application and Response but failed to disclose that (i) with numerous of their officers simultaneously employed by Highland, the Advisors knew at all relevant times exactly what services Highland was providing and by whom they were being provided; (ii) Mr. Waterhouse, the Advisors' "authorized agent," was responsible for, knew of, and approved all payments made by the Advisors to Highland under the Agreements; (iii) the Advisors assured the

---

[4] The Shared Services Agreements were terminated in accordance with their terms in early 2021.

4

boards overseeing the Advisors' retail funds (the "Retail Boards") that Highland was performing under the Agreements and was working with the Advisors on a transition plan to avoid any interruption in such services arising from Highland's termination of the Agreements; (iv) in February 2021, the Advisors requested, and received, multiple extensions of the Agreements without which the Advisors could not have operated their business; and (v) until the filing of the Application, the Advisors never contended that Highland had breached any of the Agreements.[5]

**B.    The Advisors' Allegations Concerning Damages and Related Matters Illustrate the Lack of Credibility in the Alleged Claim**

9.     On its face, the Advisors' $14 million claim is absurd as it appears to represent nearly *all* payments made by the Advisors to Highland under all of the Agreements – even during the periods (i) when Mr. Dondero remained in control of all of the entities, (ii) when Mr. Dondero was a portfolio manager at the Debtor, (iii) before Mr. Seery gave his alleged edict to cease all services in July 2020, and (iv) when the Advisors were representing to the Retail Boards that Highland was continuing to provide services under the Agreements.

**C.    The Timing of the Alleged Claim Is Suspect**

10.    In the Response, the Advisors contend for the first time that they only discovered the alleged overpayments in November 2020 and could not have filed the Application sooner (even though Mr. Seery allegedly directed the cessation of services in July 2020).

11.    This contention makes no sense because there will be no dispute that the Advisors and their officers knew at all relevant times (i) the nature and extent of services Highland was providing, and (ii) the amount of money the Advisors were paying for those services. But as will be shown at trial, this belated contention is being advanced, among other reasons, in a futile attempt

---

[5] *See* Objection, ¶¶ 16-21, 27.

to justify the Advisors' tardiness in filing the Alleged Claim in response to Highland's waiver argument and to otherwise support spurious contentions.[6]

## ARGUMENT

12. The facts will show the Advisors received the benefit of their bargain and the allegations of alleged overpayment are false. However, the Alleged Claim also fails as a matter of law because it has been waived and is otherwise barred by the "voluntary payment" rule.

### A. The Advisors Waived the Alleged Claims

13. The Advisors argue they did not waive the Alleged Claim because (i) the Agreements contain enforceable nonwaiver provisions and (ii) they never manifested an intent to waive their rights. Response § 12.

14. Highland agrees that each Agreement contains a generic and broad nonwaiver provision.[7] However, the Texas Supreme Court has unequivocally held that a nonwaiver provision can itself be waived and has implied that broad, generic nonwaiver provisions – like those in the Agreements – may not be enforceable at all. *Shields LP v. Bradberry*, 526 S.W.3d 471, 482-83 (Tex. 2017) ("To the extent there has been any doubt up to this time, we affirm that a party's rights under a nonwaiver provision may indeed be waived expressly or impliedly"); *Id.* at 484 ("a nonwaiver provision absolutely barring waiver in the most general of terms might be wholly ineffective"); *see also* 8 Corbin on Contracts § 40.13 ("a provision that an express condition of a

---

[6] As a result of Mr. Dondero's instructions, the Advisors owe Highland $2.56 million under the Agreements plus an additional $2.15 million in unpaid expense reimbursements, as of May 2021. This amount excludes other amounts owed by the Advisors, including the approximately $30 million due under various demand and term notes.

[7] NexPoint SSA § 8.07; HCMFA SSA §§ 9.02, 9.12; NexPoint PRA § 6.12; HCMFA PRA § 6.12. The Advisors also cite the reservation of rights in the *Shared Resources Agreement*, executed on March 1, 2021, as evidence of nonwaiver. Response ¶ 8. That agreement was entered into a month and a half after the filing of the Application and does not change the Advisors' conduct prior to the filing of the Application. Nor does it change the Advisors' rights. They reserved the Alleged Claim with all its deficiencies and with Highland's right to assert all defenses. And, because the Alleged Claim had already been waived, the Advisors' effectively reserved nothing.

promise or promises in the contract cannot be eliminated by waiver, or by conduct constituting estoppel, is wholly ineffective").

15. Highland also agrees that waiver has three elements: (i) an existing right or benefit; (ii) actual knowledge of its existence; and (iii) actual intent to relinquish the right or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W. 3d 773, 778 (Tex. 2008); Response ¶ 15. But, while waiver is largely a matter of intent, that intent should be implied where a party has relied on its counterparty's conduct to its detriment. *Enserch Corp. v. Rebich*, 925 S.W.3d 75, 82 (Tex. App. 1996) ("'[W]aiver by implication should not be inferred contrary to the intention of the party whose rights would be injuriously affected thereby, unless the opposite party has been misled to his or her prejudice'") (citations omitted).

16. The evidence will show that the Advisors' conduct satisfies each of the foregoing elements and the Alleged Claim and the nonwaiver provisions in the Agreements have been waived. In fact, the Advisors have only put forth one actual argument as to why waiver should not apply in the Response: they did not discover the conduct prior to November 2020. That argument is fallacious. The Advisors have engaged in a multi-year course of conduct with respect to the Agreements, and Highland reasonably relied on that course of conduct. The Advisors' efforts to re-write that history to Highland's material detriment are unavailing.

B. **The Voluntary Payment Rule Bars the Alleged Claim**

17. The Advisors are also precluded from recovering any alleged overpayments under the voluntary payment rule. The Advisors seek to avoid this result by arguing the voluntary

payment rule does not apply to (i) breach of contract claims or (ii) mistakes of fact.[8] The Advisors misinterpret the case law and misapply the facts of this case.

18. The Texas Supreme Court case *BMG Direct Marketing v. Peake* is instructive. 178 S.W. 3d (Tex. 2004). In *BMG*, the court was asked to decide whether a contract party that had voluntarily paid late fees pursuant to a "contractually agreed-upon late fee" provision could later argue that such provision was an "unenforceable illegal penalty." *Id.*, at 766-67, 771-76. The court held that recovery of the contractually agreed-upon fees was barred by the voluntary payment rule, and, in doing so, assessed and rejected movant's argument that the voluntary payment rule did not apply because movant's claims sought to *void* a contractual provision. *Id.*, at 775 ("[T]o the extent the subject matter of Peake's claims is covered by the parties' contract, the rule would not apply. But insofar as Peake alleges an illegal penalty . . . which would operate to void the contractual late-fee. . . his refund suit sounds in restitution for unjust enrichment"). Because the remedy sounded in unjust enrichment, it was barred by the voluntary payment rule.[9]

19. The Advisors' allegations are on all fours with *BMG*. First, they allege overpayment under the Reimbursement Agreements because the calculation was based on an outdated schedule of employees. Application §§ 18, 23. Both parties, however, are obligated to

---

[8] The Advisors also argue the voluntary payment rule does not apply to statutory claims and the Alleged Claim arises from a statute because it is an administrative claim under the Bankruptcy Code. Response § 19. This argument is frivolous and should be quickly rejected. The Bankruptcy Code did not create the Alleged Claim, which arose from Highland's alleged breach of the Agreements; rather, the Bankruptcy Code simply provides rules for the priority and treatment of the Alleged Claim relative to other claims asserted against Highland. The Alleged Claim is not a statutory claim.

[9] Notably, various courts, including the Fifth Circuit Court of Appeals, addressing the voluntary payment rule under different states' common law (which are substantively similar to the voluntary payment rule under Texas common law), have readily applied the voluntary payment rule to breach of contract claims. *See, e.g., Chris Albritton Constr. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 531-33 (5th Cir. 2002) (applying voluntary payment rule under Mississippi law (substantively similar to Texas law) to breach-of-contract action; "the voluntary payment doctrine defeats Plaintiffs' claims for breach of contract"); *Salling v. Budget Rent-A-Car Sys.*, 672 F.3d 442, 444-45 (6th Cir. 2012) (voluntary payment rule under Ohio law (substantively similar to Texas law) was valid defense to breach of contract claim); *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 381 F.Supp.3d 185, 222 (N.D.N.Y. 2019) (breach-of-contract action; applying New York law which is substantively similar to Texas law).

8

update the schedule of employees (NexPoint PRA § 4.02; HCMFA PRA § 4.02), and the Advisors are essentially arguing "mutual mistake," the remedy for which is to void the contract and return overpaid fees under a theory of unjust enrichment. *See, e.g., Burlington N.R.R. v. Sw. Elec. Power*, 925 S.W.2d 92, 97 (Tex. App. 1996) ("Recovery under principles of unjust enrichment is also appropriate when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons"). Second, they allege they overpaid under the Shared Services Agreements because they paid for services Highland ceased providing in July 2020. Highland, however, had no obligation to provide such services, which were contrary to its interest,[10] and, even if it did, that obligation would be void under public policy.[11] *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 483 (Tex. 2016) ("'A contract to do a thing which cannot be performed without violation of the law' violates public policy and is void.") (citations omitted). Again, the Advisors ability to recover fees paid for such "services" would be through unjust enrichment.[12]

20. The Advisors' argument that the voluntary payment rule does not apply to mistakes of fact also overstates the case law. The only case cited by the Advisors addressed a "mutual" mistake. *Central Austin Apts., LLC v. UP Austin Holdings, LP*, 2014 Tex. App. LEXIS 10357, *44 n. 28 (Tex. App. Feb. 6, 2015).[13] As set forth above and as the facts will show, there was no

---

[10] *See, e.g.,* HCMFA SSA § 6.01; NexPoint SSA §§ 2.03(d), (e), (j).

[11] Mr. Seery's direction in or around July 2020 was in response to this Court's order and concern about potential conflicts of interest. *See Order on Motion for Clarification of Ruling [DE # 914] and Joinders thereto [DE ## 915 and 927]* [Docket No. 935 at 10] ("This could escalate to problematic territory in a hurry. **The court trusts the Debtor's independent directors and new CEO are scrutinizing the issue of in-house lawyers potentially advising both the Debtor and Highland Non-Debtor Entity targets.**") (emphasis in original).

[12] The Advisors admit that they are seeking recovery, at least in part, under a theory of unjust enrichment. Response § 19 ("The Advisors have not submitted merely a common-law unjust enrichment claim.").

[13] The Advisors state *Central Austin* was reversed on other grounds. *Central Austin* was vacated, not reversed, following the parties' settlement. *See* 2015 Tex. App. LEXIS 1205 (Tex. App. Feb. 6, 2015).

"mutual" mistake. The Advisors had the same information as Highland and voluntarily chose to make payments under the Agreements without reservation. In these circumstances, the voluntary payment rule applies. *See, e.g., BMG*, 178 S.W.3d at 773 (finding voluntary payment rule applied when late-fee policy was fully disclosed and the contract party was made aware of the amount of such late fees and the circumstances under which they would be imposed); *Chris Albritton Constr. Co.*, 304 F.3d at 531-33 (applying Mississippi law (substantively similar to Texas law) and holding "uncertainty about the facts, irrespective of the reason for such uncertainty, is not the equivalent of a mistake of fact") (citations omitted); *AAA Bonding Agency v. United States Dep't of Homeland Security*, 2015 U.S. Dist. LEXIS 196279, at *4 (S.D. Tex. Nov. 12, 2015) (same).

## CONCLUSION

WHEREFORE, Highland respectfully requests that the Court (i) deny the Application, and (iii) grant Highland such other and further relief as the Court deems just and proper.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

| | |
|---|---|
| Dated: January 5, 2022 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Jeffrey N. Pomerantz (CA Bar No. 143717)<br>John A. Morris (NY Bar No. 266326)<br>Gregory V. Demo (NY Bar No. 5371992)<br>Hayley R. Winograd (NY Bar No. 5612569)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>Email: jpomerantz@pszjlaw.com<br>         jmorris@pszjlaw.com<br>         gdemo@pszjlaw.com<br>         hwinograd@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>MHayward@HaywardFirm.com<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br><br>*Counsel for Highland Capital Management, L.P.* |