

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed April 7, 2022

United States Bankruptcy Judge

___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| Plaintiff, | § Adversary Proceeding No. |
| vs. | § 21-03010-sgj |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P., | § |
| Defendants. | § |

## JOINT PRETRIAL ORDER

This Joint Pretrial Order is jointly submitted to the Court for entry pursuant to Local Bankruptcy Rule 7016-1 and the *Agreed Amended Scheduling Order* [A.P. Docket No. 60][1] by plaintiff Highland Capital Management, L.P. ("Plaintiff" or "Highland") and defendants Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NexPoint, and together with HCMFA, "Defendants" or the "Advisors," and collectively with Plaintiff, the "Parties"), in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case") and Adversary Proceeding.

### I.  NATURE OF ACTION AND PROCEDURAL POSTURE[2]

1. This action involves competing claims for alleged breaches of certain written Shared Services Agreements and Payroll Reimbursement Agreements (collectively, the "Agreements").

2. On January 24, 2021, the Advisors filed their *Application for Allowance of Administrative Claim* [Bankr. Docket No. 1826][3] (the "Advisors' Admin Claim") seeking damages totaling approximately $14 million arising from (i) the Advisors' alleged overpayment of amounts due under the Payroll Reimbursement Agreements and (ii) Highland's alleged nonperformance under the Shared Services Agreements.

3. On May 5, 2021, Highland filed its *Objection to Application for Administrative Claim of Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.* [Bankr. Docket No. 2274] ("Highland's Objection").

---

[1] "A.P. Docket No." refers to the docket entries maintained in the above-captioned adversary proceeding (the "Adversary Proceeding").

[2] Capitalized terms not defined in this Section I shall have the meanings ascribed to them below.

[3] "Bankr. Docket No." refers to the docket entries maintained in the Bankruptcy Case.

4. On May 31, 2021, the Court entered the *Agreed Scheduling Order with Respect to Debtor's Objection to Application for Administrative Claim of Highland Capital Management Fund Advisors L.P. and NexPoint Advisors, L.P.* [Bankr. Docket No. 2345] (the "Scheduling Order").

5. On February 17, 2021, Highland commenced the Adversary Proceeding by filing its *Verified Original Complaint for Damages and for Declaratory and Injunctive Relief* [A.P. Docket No. 1] (the "Complaint"). In its Complaint, Highland (i) asserted a breach of contract claim ("Highland's Breach of Contract Claim") for damages arising from the Advisors' alleged breach of the Agreements, and (ii) sought declaratory and injunctive relief (the "Equitable Relief").

6. On February 24, 2021, following an evidentiary hearing, the Court entered an Order resolving Highland's claims for Equitable Relief [A.P. Docket No. 25] (the "February Order").

7. On March 22, 2021, the Advisors filed their *Original Answer* to the Complaint [A.P. Docket No. 33].

8. On August 4, 2021, the Parties agreed to consolidate the Advisors' Admin Claim and Highland's Breach of Contract Claim in the Adversary Proceeding since both claims involve related issues of fact concerning the Agreements. *See Stipulation (a) Amending Scheduling Order and (b) Consolidating and Resolving Certain Matters* [A.P. Docket No. 36] (the "Stipulation").

9. On August 6, 2021, the Court entered an *Order Approving Stipulation (a) Amending Scheduling Order and (b) Consolidating and Resolving Certain Matters* [A.P. Docket No. 37] (the "Consolidation Order").

10. On December 15, 2021, the Parties filed the *Stipulation Regarding Second Amended Scheduling Order* [A.P. Docket No. 45] (the "Second Stipulation").

11. On December 17, 2021, the Court entered an *Order Approving Stipulation Regarding Second Amended Scheduling Order* [A.P. Docket No. 46] (the "Second Amended Scheduling Order").

12. On January 31, 2022, the Parties filed the *Joint Motion to Continue Trial and Extend Scheduling Order* [A.P. Docket No. 59] (the "Joint Motion to Continue").

13. On February 1, 2022, the Court entered an *Order Approving the Parties' Agreed Amended Scheduling Order* [Docket No. 60] (the "Third Amended Scheduling Order").

14. A trial on Highland's Breach of Contract Claim and the Advisors' Admin Claim is scheduled for April 12-13, 2022.

## II. PARTIES' CLAIMS AND DEFENSES

**The following statements and contentions of the respective Parties in this Section reflect the respective views of each Party and are not a joint statement or stipulation. No Party admits, agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party.**

**A.    Highland's Claims:**

15. Highland asserts breach of contract claims against (a) HCMFA for failing to pay for services rendered by Highland under (i) the HCMFA SSA during the months of November 2020, December 2020, and January 2021, and (ii) the HCMFA PRA during the months of December 2020 and January 2021; (b) NexPoint for failing to pay for services rendered by Highland under (i) the NexPoint SSA during the months of December 2020 and January 2021, and (ii) the NexPoint PRA during the months of December 2020 and January 2021; and (c) the Advisors for reimbursable, out-of-pocket costs of Highland not otherwise captured through the monthly invoices and represented primarily by the Advisors' allocable portion of accounting software, IT development, and investment research products and tools (*e.g.*, Bloomberg machines).

16. Highland is also entitled to recover its costs and expenses, including its attorneys' fees, prosecuting the foregoing claims and defense against the Advisors' claims.

**B.     Summary of the Advisors' Defense**

17. The Advisors contest Highland's breach of contract claims for unpaid amounts under the Agreements for essentially the same reasons as outlined below regarding the Advisors' Admin Claim; namely, that Highland cannot seek reimbursement under the Payroll Reimbursement Agreements for employees who were not actually employees of Highland providing services to the Advisors during the relevant time period, while various of the services to be provided under the Shared Services Agreement were not actually provided by Highland during the relevant time period.  Moreover, to the extent that section 2.02 of the Payroll Reimbursement Agreements controls the question of the proper calculation of amounts reimbursable by the Advisors, the Advisors timely sought changes to such proper amounts and Highland failed to negotiate the same in good faith as required by such section, meaning that Highland cannot now claim that the preset monthly reimbursement amounts controls.  To the extent that any amounts are owing under the Agreements, such amounts should be setoff and netted against the Advisors' Admin Claim.

**C.     The Advisors' Admin Claim**

18. The Advisors' Admin Claim is based on: (i) postpetition overpayments by the Advisors to Highland under the Payroll Reimbursement Agreements; and (ii) postpetition payments by the Advisors to Highland under the Shared Services Agreements for services that Highland failed to provide, resulting in a breach of contract by Highland.

19. Highland, though its employees, provided a wide range of services to the Advisors. Under the Payroll Reimbursement Agreements, each of the Advisors is to reimburse Highland for its actual costs of the employees providing services to the Advisors under the Payroll

Reimbursement Agreements, according to schedules of employees and allocations of amounts attached to each of the Payroll Reimbursement Agreements. As of the Petition Date, and through to the termination of the Payroll Reimbursement Agreements, Highland no longer had various employees, who had either resigned or were terminated, a process that continued and accelerated postpetition as Highland reduced its personnel count. Yet, during that whole period, Highland was billing the Advisors—and paying itself from the Advisors' funds—for employees who were no longer employed by Highland. This resulted in postpetition overpayments by the Advisors to Highland totaling $7,649,942, broken down as $4,928,103 in postpetition overpayments by HCMFA and $2,721,839 in postpetition overpayments by NexPoint.

20. Under the Shared Services Agreements, each of the Advisors was paying to Highland certain set amounts on a monthly basis for services that Highland, through its employees, was to provide to the Advisors. These services included legal services and compliance services. During the bankruptcy case, Highland instructed various of its employees that they could no longer provide certain services to the Advisors, which Highland believed may have been adverse to the interests of Highland. This led the Advisors to being forced to retain two new employees to cover for these services, resulting in $425,000 in damages. Additionally, according to Highland's own internal analysis, the Advisors were paying Highland $1 million for legal services that Highland was no longer providing, resulting in $1.3 million in payments postpetition for services that Highland failed to provide. Therefore, the Advisors claim administrative claims for overpayments under, and breaches of, the Shared Services Agreements in the amount of $1,725,000.

D. **Summary of Highland's Defenses**

21. The Advisors' claims were manufactured for settlement purposes late in 2020 after (a) the Independent Board demanded Mr. Dondero's resignation; (b) Highland filed an asset-monetization plan; (c) Highland reached settlements with some of Mr. Dondero's most bitter

adversaries on terms he personally found unreasonable; (d) Highland gave notice of termination of the Shared Services Agreements on November 30, 2020; (e) Mr. Dondero began engaging in conduct that ultimately led to the imposition of a temporary restraining order against him in early December 2020; and (f) Highland was nearing confirmation of its proposed Plan of Reorganization.

22.     The clear and unambiguous terms of the HCMFA PRA and NexPoint PRA establish that the Advisors agreed to pay a flat monthly fee for investment advisory services rendered, regardless of which employees actually performed those services, unless the parties agreed otherwise pursuant to Section 2.02 of the PRAs.

23.     If the Court were to find the PRAs ambiguous on this point, the parol evidence will corroborate Highland's contention that the parties always intended that the Advisors would pay a flat monthly fee for investment advisory services unless they agreed otherwise.

24.     Moreover, the parties' course of dealing will further corroborate Highland's contention in this regard. Specifically, from January 1, 2018 (the effective date of the PRAs) through January 1, 2020 (the month Mr. Dondero was forced to surrender control), the Advisors paid the precise amounts set forth in the PRAs despite having contemporaneous knowledge that a substantial number of Dual Employees had been terminated.

25.     The undisputed evidence will show that the Independent Board and Highland engaged in the exact same conduct with respect to the administration of the PRAs that they had engaged in during 2018 and 2019 when Mr. Dondero was in control of Highland and the Advisors. In short, the evidence will show that Highland fully performed its obligations under the PRAs.

26.     In addition to the plain and unambiguous terms of the PRAs, and the parol evidence and course of dealing corroborating Highland's contentions, the Advisors' claims under the PRAs

are barred by the doctrine of waiver and the Voluntary Payment Rule, and the Advisors cannot prove damages in any event.

27. The Advisors' claims under the Shared Services Agreements fail because Highland fully performed its obligations under those Agreements as reflected in, among other pieces of evidence, the Advisors' extensive representations to the Retail Board that, throughout 2020, Highland continued to provide the same level and quality of services as it always had.

28. Moreover, the Advisors' claims under the Shared Services Agreements are barred by the doctrine of waiver and the Voluntary Payment Rule, and the Advisors cannot prove damages in any event

### III. STATEMENT OF STIPULATED FACTS

**A.  The Parties Stipulate to the Following Facts:**

**1.  Case Background**

29. On October 16, 2019, Highland filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS).

30. On December 4, 2019, the Delaware Court entered an order transferring venue of the Bankruptcy Case to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. [Bankr. Docket No. 186] (the "Bankruptcy Court").

31. On January 9, 2020, the Court entered an order removing Highland's founder, James Dondero ("Mr. Dondero"), from control and replacing him with an independent board of directors. [Bankr. Docket No. 339]. The independent directors included: James P. Seery, Jr., John S. Dubel, and Retired Bankruptcy Judge Russell Nelms (the "Independent Directors").

32. On July 16, 2020, the Court approved Mr. Seery's appointment as Highland's Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative. *See Order Approving*

*Debtor's Motion Under Bankruptcy Code Section 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr. as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Bankr. Docket No. 854].

33. On February 22, 2021, the Bankruptcy Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "Confirmation Order") confirming the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., (as Modified)* [Bankr. Docket No. 1808] (the "Plan").

34. The Plan went Effective (as defined in the Plan) on August 11, 2021. *See Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Bankr. Docket No. 2700]. Highland is currently managed by Mr. Seery, one of its former Independent Directors, and a committee, which includes certain of Highland's prepetition creditors and one independent member.

**2.      The Advisors**

35. The Advisors are controlled by James Dondero.

36. The Advisors are registered investment advisors. They serve as the investment manager, either directly or indirectly, to a number of investment vehicles (collectively, the "Clients"), including certain retail funds (the retail funds for which HCMFA and NexPoint serve as the investment advisor are collectively referred to as the "Retail Funds") regulated pursuant to the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Company Act of 1940.

37. The Advisors provide investment advisory services to their Clients pursuant to written investment advisory agreements (the "Investment Advisory Agreements").

38. HCMFA was formed on or around February 2, 2009, and had previously been known as Pyxis Capital, L.P. ("Pyxis").

39. NexPoint was formed on or around March 20, 2012.

**3.    The Shared Services Agreements**

40. In 2013, Highland entered into certain Shared Services Agreements with each of the Advisors. The purpose of the Shared Services Agreements was to outsource certain office functions to Highland that the Advisors did not carry in-house. This outsourcing enabled the Advisors to perform their obligations to their Clients under the Investment Advisory Agreements.

41. Specifically, on June 5, 2013, Highland and NexPoint entered into that certain *Shared Services Agreement*, effective as of January 1, 2013.

42. Highland and NexPoint entered into that certain *Amended and Restated Shared Services Agreement* (the "NexPoint SSA"), effective as of January 1, 2018.

43. On February 9, 2012, Highland and Pyxis (HCMFA's predecessor) entered into that certain *Shared Services Agreement*, effective as of December 15, 2011.

44. On September 12, 2012, Highland and Pyxis entered into that certain *Amended and Restated Shared Services Agreement*, effective as of December 15, 2011.

45. Highland and HCMFA entered into that certain *Second Amended and Restated Shared Services Agreement*, effective as of February 8, 2013 (the "HCMFA SSA", and together with the NexPoint SSA, the "Shared Services Agreements").

**4.    The Termination of the Shared Services Agreements**

46. On November 30, 2020, Highland provided written notice to (i) HCMFA that it intended to terminate the HCMFA SSA as of January 31, 2021 (the "Termination Date"), and (ii) NexPoint that it intended to terminate the NexPoint SSA as of January 31, 2021 (the written notices are referred to together as the "Termination Notices").

47. On January 29, 2021, the Parties executed an agreement extending the Termination Date to February 14, 2021 in exchange for the Advisors' advance payment for services to be rendered by Highland during that two-week period, which date was further extended through to the end of February, 2021.

**5.** **The Payroll Reimbursement Agreements**

    **i.** **The NexPoint PRA**

48. Highland and NexPoint entered into that certain *Sub-Advisory Agreement*, effective as of January 1, 2018 (the "Sub-Advisory Agreement"). Pursuant to the Sub-Advisory Agreement, Highland provided certain front-office services to the Advisors to enable the Advisors to fulfill their obligations to their Clients under the Investment Management Agreements.

49. On or around May 1, 2018, Highland and NexPoint entered into that certain *Payroll Reimbursement Agreement* (the "NexPoint PRA").

50. The NexPoint PRA replaced the Sub-Advisory Agreement and was effective as of January 1, 2018.

51. On December 14, 2018, Highland and NexPoint entered into *Amendment Number One to Payroll Reimbursement Agreement* (the "NexPoint PRA Amendment").

    **ii.** **The HCMFA PRA**

52. On or around May 1, 2018, Highland and HCMFA entered into that certain *Payroll Reimbursement Agreement*, effective as of January 1, 2018 (the "HCMFA PRA," with the NexPoint PRA, the "Payroll Reimbursement Agreements").

53. On December 14, 2018, Highland and HCMFA entered into that certain *Amendment Number One to Payroll Reimbursement Agreement* (the "HCMFA PRA Amendment," and together with the NexPoint PRA Amendment, the "PRA Amendments").

## IV. CONTESTED ISSUES OF FACT

**The statements and contentions in this section reflect the respective views of each Party and are not a joint statement or stipulation. No Party admits, agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party.**

**A.    Highland's Contested Issues of Fact**

54.    Highland incorporates by reference as if fully set forth herein paragraphs 12-128 of *Highland's Proposed Findings of Fact and Conclusions of Law* that are being filed contemporaneously with this Pre-Trial Order.

**B.    The Advisors' Contested Issues of Fact**

55.    Whether Highland was billing the Advisors postpetition under the Payroll Reimbursement Agreements for employees who were no longer actually employed by Highland, and on account of which the Advisors received no value, constituting a breach by Highland of the Payroll Reimbursement Agreements.

56.    Whether, as a result of the same, Highland overbilled the Advisors, and the Advisors overpaid to Highland, approximately $7,649,942, representing damages to the Advisors for Highland's postpetition breaches of the Payroll Reimbursement Agreements.

57.    Whether Highland was billing the Advisors postpetition under the Shared Services Agreements for services that Highland was not providing, and on account of which the Advisors received no value, constituting a breach by Highland of the Payroll Reimbursement Agreements.

58.    Whether, as a result of the same, the Advisors suffered damages in the form of $425,000 expended by the Advisors to obtain replacement and cover services, and $1.3 million in payments by the Advisors to Highland postpetition for which Highland failed to provide the required services.

59.    Whether Highland was making a profit under the Payroll Reimbursement Agreements postpetition.

60. Whether Highland was making more of a profit under the Shared Services Agreements postpetition than permitted in those agreements.

61. Whether the Advisors' postpetition payments to Highland under the Agreements were voluntarily made by the Advisors.

62. Whether the Advisors' postpetition payments to Highland under the Agreements were made with full knowledge of all relevant facts.

63. Whether the Advisors waived their claim for overpayments under the Agreements by not taking action sooner or by not following any protocol or provision in the Agreements to change monthly amounts payable under the Agreements and specified in the Agreements.

64. Whether, prepetition, the Parties agreed to do an annual true-up and reconciliation of amounts properly payable under the Payroll Reimbursement Agreements, as opposed to a monthly process of changing the amounts payable allegedly specified in the Payroll Reimbursement Agreements, thereby modifying the Payroll Reimbursement Agreements by their consent and their actions.

65. Whether, in late 2019 or early 2020, Frank Waterhouse, then an officer of both the Advisors and Highland, raised the issue of the overpayments under the Agreements with Fred Caruso, then Highland's CRO in order to initiate a true-up or reconciliation of amounts properly payable under the Agreements, in response to which Mr. Caruso and Highland's legal counsel informed Mr. Waterhouse that the automatic stay prevented any such true-up or reconciliation.

66. To the extent that the Advisors did not sooner, or allegedly timely, initiate the process to change the monthly reimbursement amounts under the Payroll Reimbursement Agreements as provided for therein, whether Highland owed the Advisors a duty to do so on the Advisors' behalf pursuant to the services that Highland was required to provide under the Shared

Services Agreements and whether Highland's failure to do so estops or otherwise prevents Highland from raising any issue of timeliness.

67. With respect to Highland's claims against the Advisors for amounts allegedly owing and unpaid under the Agreements, whether Highland breached the Payroll Reimbursement Agreements by not negotiating changes to the reimbursement amounts in good faith as required by the Agreements.

## V.    CONTESTED ISSUES OF LAW

**The statements and contentions in this section reflect the respective views of each Party and are not a joint statement or stipulation. No Party admits, agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party.**

A. **Highland submits the following Contested Issues of Law:**

68. Whether HCMFA breached its obligations under the HCFMA SSA by failing to pay Highland for middle- and back-office services rendered in November 2020, December 2020, and January 2021?

69. Whether HCMFA breached its obligations under the HCMFA PRA by failing to pay for investment advisory services in December 2020 and January 2021?

70. Whether NexPoint breached its obligations under the NexPoint SSA by failing to pay Highland for middle- and back-office services rendered in December 2020 and January 2021?

71. Whether NexPoint breached its obligations under the NexPoint PRA by failing to pay for investment advisory services in December 2020 and January 2021?

72. Whether Highland is entitled to recover from the Advisors its costs and fees, including its attorneys' fees, incurred prosecuting and defending the claims subject to this Adversary Proceeding?

73. Whether the PRAs clearly and unambiguously required each of the Advisors to pay Highland a flat monthly fee for investment advisory services?

74. Whether the parol evidence establishes that the parties intended that the Advisors would Highland a flat monthly fee for investment advisory services?

75. Whether the parties' course of dealing corroborates Highland's contention that, as intended, the PRAs required each of the Advisors to pay Highland a flat monthly fee for investment advisory services?

76. Whether the Advisors waived their right to assert that they "overpaid" under the PRAs and the Shared Services Agreements?

77. Whether the Advisors have met their burden of proving that they have been damaged, and, if so, the quantum of damages sustained?

**B.    The Advisors submit the following Contested Issues of law:**

78. Whether, under the Payroll Reimbursement Agreements, the Advisors must reimburse Highland for Highland's employees for actual amounts and costs of such employees or whether the presumed monthly payment amount specified in each Payroll Reimbursement Agreement controls irrespective of actual amounts and costs; in other words, which provision regarding the reimbursement amount in the Payroll Reimbursement Agreements controls.

79. Whether Highland breached the Payroll Reimbursement Agreements by charging the Advisors, and paying itself from the Advisors' funds, for employees who were not actually employees of Highland.

80. Whether the Advisors initiated the process in late 2019 or early 2020 to change the monthly reimbursement amounts under the Payroll Reimbursement Agreements and whether Highland breached those agreements by not following or permitting the process for changing the same.

81. Whether the automatic stay prevented the Advisors from terminating or enforcing the Payroll Reimbursement Agreements, as executory contracts that had not been assumed by Highland.

82. Whether Highland breached the Shared Services Agreements by failing to provide certain services for which it billed the Advisors, including legal services, and additionally by failing to address and correct the overbilling under the Payroll Reimbursement Agreements.

83. Whether the Advisors' overbilling claim is properly allowable as an administrative claim.

84. Whether the Advisors breached the Shared Services Agreements by not paying Highland for amounts allegedly do under those Agreements.

85. Whether Highland can seek any damages for alleged unpaid amounts under the Payroll Reimbursement Agreements after it failed in good faith to negotiate requested changes to the monthly reimbursement amounts.

## VI.    ESTIMATE OF THE LENGTH OF TRIAL

86. The Parties believe that the trial of this Adversary Proceeding can be completed in two days.

## VII.    LIST OF PENDING OR ANTICIPATED MOTIONS IN THIS ADVERSARY PROCEEDING

87. Subject to evidentiary objections that may be asserted, the Parties submit that there are no pending or anticipated motions in this Adversary Proceeding.

88. The quantification of any attorney's fees awarded in this Adversary Proceeding, subject to defenses, will be handled through post-trial motion practice under Rule 54(d)(2), and no Party need present evidence on any attorney fee claim at the trial of this Adversary Proceeding.

## VIII.    ADDITIONAL MATTERS THAT MIGHT AID IN DISPOSITION OF THIS CASE

89. The Parties submit that there are no additional matters that might aid in disposition of this case.

### ### END OF ORDER ###

Submitted by:

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

-and-

**MUNSCH HARDT KOPF & HARR P.C.**

*/s/ Davor Rukavina*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Julian P. Vasek, Esq.
Texas Bar No. 24070790
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
(214) 855-7500

*Counsel for NexPoint Advisors, L.P. and*
*Highland Capital Management Fund Advisors, L.P.*

United States Bankruptcy Court
Northern District of Texas

Highland Capital Management, L.P.,
    Plaintiff

Adv. Proc. No. 21-03010-sgj

Highland Capital Management Fund Advisor,
    Defendant

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0539-3 | User: admin | Page 1 of 2 |
| Date Rcvd: Apr 08, 2022 | Form ID: pdf001 | Total Noticed: 4 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

\+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 10, 2022:**

| Recip ID | Recipient Name and Address |
|---|---|
| dft | + Highland Capital Management Fund Advisors, L.P., K&LGates LLP, c/o Stephen G. Topetzes, 1600 K Street, NW, Washington, DC 20006-2806 |
| dft | + NexPoint Advisors, L.P., K&L Gates LLP, c/o Stephen G. Topetzes, 1600 K Street, NW, Washington, DC 20006-2806 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| ust | + Email/Text: ustpregion06.da.ecf@usdoj.gov | Apr 08 2022 21:18:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | + Email/Text: ustpregion07.au.ecf@usdoj.gov | Apr 08 2022 21:18:00 | United States Trustee - AU12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |

TOTAL: 2

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.
NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 10, 2022      Signature:      /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 8, 2022 at the address(es) listed below:

| Name | Email Address |
|---|---|
| A. Lee Hogewood, III | on behalf of Defendant NexPoint Advisors L.P. lee.hogewood@klgates.com, haley.fields@klgates.com;matthew.houston@klgates.com;mary-beth.pearson@klgates.com;litigation.docketing@klgates.com;Em |

| | | |
|---|---|---|
| District/off: 0539-3 | User: admin | Page 2 of 2 |
| Date Rcvd: Apr 08, 2022 | Form ID: pdf001 | Total Noticed: 4 |

|  |  |
|---|---|
| | ily.mather@klgates.com;Artoush.varshosaz@klgates.com |
| A. Lee Hogewood, III | on behalf of Defendant Highland Capital Management Fund Advisors  L.P. lee.hogewood@klgates.com, haley.fields@klgates.com;matthew.houston@klgates.com;mary-beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com |
| Davor Rukavina | on behalf of Defendant NexPoint Advisors  L.P. drukavina@munsch.com |
| Davor Rukavina | on behalf of Defendant Highland Capital Management Fund Advisors  L.P. drukavina@munsch.com |
| Julian Preston Vasek | on behalf of Defendant NexPoint Advisors  L.P. jvasek@munsch.com |
| Julian Preston Vasek | on behalf of Defendant Highland Capital Management Fund Advisors  L.P. jvasek@munsch.com |
| Juliana Hoffman | on behalf of Interested Party Committee of Unsecured Creditors jhoffman@sidley.com txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com |
| Matthew A. Clemente | on behalf of Interested Party Committee of Unsecured Creditors mclemente@sidley.com matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwomey@sidley.com |
| Paige Holden Montgomery | on behalf of Interested Party Committee of Unsecured Creditors pmontgomery@sidley.com txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;crognes@sidley.com;ebromagen@sidley.com;efilingnotice@sidley.com |
| Thomas Daniel Berghman | on behalf of Defendant Highland Capital Management Fund Advisors  L.P. tberghman@munsch.com |
| Thomas Daniel Berghman | on behalf of Defendant NexPoint Advisors  L.P. tberghman@munsch.com |
| Zachery Z. Annable | on behalf of Plaintiff Highland Capital Management  L.P. zannable@haywardfirm.com |

TOTAL: 12