PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | Adversary Proceeding No. |
| Plaintiff, | § | 21-03010-sgj |
| | § | |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND | § | |
| ADVISORS, L.P.; NEXPOINT ADVISORS, L.P., | § | |
| | § | |
| Defendants. | | |

## HIGHLAND'S RESPONSE TO
## OBJECTIONS TO TRIAL SUBPOENAS *DUCES TECUM*

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Highland Capital Management, L.P., the reorganized debtor and the plaintiff in the above-referenced adversary proceeding ("Highland"), hereby files this response and the declaration of John A. Morris (the "Morris Decl."), and the exhibits annexed thereto, in opposition to the Advisors' *Objections to Trial Subpoenas Duces Tecum* [Adv. Docket No. 98] (the "Objection").[2] In furtherance thereof, Highland states as follows:

## PRELIMINARY STATEMENT

1. On April 8, 2022—one business day before trial—the Advisors objected to two subpoenas [Adv. Docket Nos. 75 and 76] (the "Subpoenas") that were first delivered to them on March 15, 2022. The Subpoenas each contain a single document request seeking limited information concerning the Postpetition Payments (defined below) surreptitiously made by the Advisors to Frank Waterhouse and Highland's then-most senior legal and compliance officers during Highland's bankruptcy.[3]

2. The Advisors do not contend that they do not have the requested information or that it would be burdensome to produce. They simply argue the deadline for document requests passed months ago and Highland should therefore be precluded from obtaining the information through the use of a "trial" subpoena. The Advisors, however, cannot assert new arguments after the close of document discovery and then use the discovery deadlines as an excuse to avoid disclosing relevant information concerning those very arguments. The Advisors' shifting assertions and theories of the case more than justify the enforcement of the Subpoenas here.

3. Prior to the August 2021 deadline to serve written discovery, the Advisors' only filed pleading was its *Application for Allowance of Administrative Expense Claim* [Bankr. Docket

---

[2] Capitalized terms not defined herein have the meanings given to them in the Objection.

[3] For these purposes only, Highland assumes that NexPoint Advisors, L.P. ("NexPoint") made Postpetition Payments to certain of Highland's employees, but that Highland Capital Management Financial Advisors, L.P. ("HCMFA") did not.

No. 1826] (the "Application"). Prior to the deadline to serve written discovery, no depositions had taken place. Nor, prior to the deadline, had the Advisors (i) alleged that Highland failed to provide "legal and compliance" services; (ii) stated that they had suffered $425,000 in damages as a result of such alleged breach; or (iii) mentioned Frank Waterhouse in any way.

4. Seven months later, on March 4, 2022, when Dustin Norris testified as the Advisors' Rule 30(b)(6) witness, Highland learned for the first time that the Advisors contend that "legal and compliance" issues are at the core of the Advisors' breach of contract claim and that the Advisors allegedly suffered $425,000 in damages as a result of such breach. It was also at that time that Highland first learned that Mr. Waterhouse might have some unidentified information concerning such alleged breach.

5. In late March 2022, Mr. Waterhouse (the Advisors' long-time Treasurer and Highland's former Chief Financial Officer) testified that (i) he was allegedly (and disputably) informed by David Klos (Highland's then-Controller) in December 2019 that the Advisors were massively "overpaying" under the Shared Service Agreements; (ii) he supposedly conferred with Scott Ellington, Isaac Leventon, and Fred Caruso (an employee of DSI, the then-Debtor's financial advisor) about the alleged "overpayments;" (iii) they all allegedly told Mr. Waterhouse that "nothing could be done because of the automatic stay;" and (iv) Mr. Waterhouse relied on that advice and *never* told James Dondero, any of the Advisors' other officers, or any of the Independent Board members or Court-appointed CEO of Mr. Klos's alleged analysis showing the "overpayments" because he had "20,000 other things to do."

6. Notably, until Mr. Norris's testimony on March 4, 2022, and the filing of the Advisor's Pretrial Brief (defined below), the Advisors forcefully asserted that they could not have

3

waived any rights because the issues of breach did not "crystalize until November 2020."[4] Now, based solely on Mr. Waterhouse, the Advisors have completely changed their theory of the case, arguing that they actually knew (through Mr. Waterhouse) of the alleged "overpayments" in December 2019, but that Highland breached Section 2.02 of the Payroll Reimbursement Agreements by failing to negotiate with Mr. Waterhouse "in good faith."

7. In sum, *Highland had no notice prior to early March 2022 that*:

- "legal and compliance" services were the foundation of the Advisors' breach of contract claim;

- the Advisors allegedly suffered $425,000 in damages as a result of this alleged breach because they had to obtain the services elsewhere;

- Frank Waterhouse is now the Advisors' primary witness;

- two other recipients of the Postpetition Payments (Messrs. Ellington and Leventon) were the only lawyers who allegedly advised Mr. Waterhouse in December 2019, on the effect of the automatic stay, but who apparently also never told Mr. Dondero, any other officer of the Advisors, or any of the Independent Board members or court-appointed CEO of the alleged "overpayments" (and who tellingly do not appear on the Advisors' witness list);

- the Advisors actually knew of the alleged "overpayments" in December 2019, rather than November 2020 as they had always alleged.

8. The information sought in the Subpoenas (i) will be used only for cross-examination of the Advisors' witness and/or for impeachment purposes; (ii) is limited in scope and duration; and (iii) goes directly to the issues of (a) Highland's alleged failure to provide "legal and compliance" services, (b) the Advisors' new damage claim – articulated for the first time during Mr. Norris' March 2022 deposition – and (c) the Advisors' credibility and that of every witness (including Mr. Waterhouse) who will testify on the Advisors' behalf.

---

[4] *See Response to Debtor's Objection to Application for Administrative Claim of Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.* [Adv. Docket No. 49] ¶ 6.

9.      Under these circumstances, the Subpoenas are proper, and the Advisors should be directed to comply with the Subpoenas.[5] Accordingly, the Objection should be overruled.

## BACKGROUND

A.     **Assertion of New Basis for Breach of Contract**

10.     On January 24, 2021, the Advisors filed the Application seeking allowance of a $14 million administrative claim. The Application did not allege that Highland had failed to provide legal and compliance services required by the Shared Service Agreements[6] and made no reference to Frank Waterhouse at all.

11.     On December 22, 2021, the Advisors filed their *Response to Debtor's Objection to Application for Administrative Claim of Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P.* [Adv. Docket No. 49] (the "Response"). The Response did not allege that Highland had failed to provide services required by the Shared Services Agreement, let alone that Highland failed to provide "legal and compliance" services. Nor did the Response make reference to Mr. Waterhouse.

12.     On March 4, 2022, seven months after the August 6, 2021 deadline for serving written discovery,[7] Highland deposed Mr. Norris, the Advisors' Rule 30(b)(6) witness. *See* Morris Dec. Exhibit 1. Through Mr. Norris, Highland learned ***for the first time*** of the Advisors' allegation that Highland breached the Shared Services Agreements by failing to provide "legal and compliance" services and that the Advisors had incurred damages of $425,000 as a result of such

---

[5] Admittedly, the Advisors' Objection would have had some merit had they not (i) suddenly focused on the newly discovered "legal and compliance" issues in March 2022 or (ii) changed their theory of the case in their Pretrial Brief to embrace Mr. Waterhouse's testimony.

[6] As used herein, "Shared Service Agreements" means, collectively, that certain *Second Amended and Restated Shared Services Agreement* between Highland and HCMFA and that certain *Amended and Restated Shared Services Agreement* between Highland and NexPoint filed as Exhibits 2 and 3, respectively, on *Reorganized Debtor's Witness and Exhibit List with Respect to Trial to Be Held on April 12-13, 2022* [Adv. Docket No. 80].

[7] Adv. Docket No. 37.

alleged breach. *See* Morris Dec. Ex. 1, at 43:22-46:23; 205:2-222:25. Highland also learned during Mr. Norris's deposition that Mr. Waterhouse had relevant information about the alleged breach. *See id.* at 42:20-43:11; 44:17-46:4; 59:18-60:17.

13. On April 6, 2022, the Advisors subsequently asserted this alleged breach in the *Advisors' Trial Brief* [Adv. Docket No. 90] (the "Pretrial Brief") alleging (i) Highland "failed to provide legal and compliance services, despite the Advisors paying for the same" resulting in costs of $425,000 and (ii) "Highland's own internal record demonstrates that Highland was not providing $1.3 million in legal services under the Shared Services Agreements . . . ." Pretrial Brief ¶ 2.

B.  **The Undisclosed Postpetition Payments and Service of the Subpoenas**

14. As previously disclosed to this Court, Highland was generally aware that certain of its senior employees, including Mr. Waterhouse, received undisclosed, postpetition payments from entities owned and/or controlled by Mr. Dondero and Mr. Ellington, including the Advisors (the "Postpetition Payments").[8] However, Highland still does not know the full extent of such payments or why they were made.

15. Highland believes the Postpetition Payments are highly relevant to the Advisors' newly asserted allegations that Highland failed to provide "legal and compliance" services. The Advisors, among others, were surreptitiously paying the Highland employees tasked with providing such services during the course of Highland's bankruptcy and now claim they incurred $425,000 in out-of-pocket expenses obtaining those services elsewhere.

16. On March 15, 2022, eleven days after Mr. Norris testified concerning the Advisors' specific assertion that Highland failed to provide legal and compliance services, Highland notified

---

[8] *See generally* Bankr. Docket Nos. 2856 and 2857.

the Advisors' counsel that it intended to serve subpoenas seeking documents relating to the Postpetition Payments. Morris Decl. Ex. 2.

17. Later that same day, Highland emailed copies of the Subpoenas to the Advisors' counsel and asked whether counsel was authorized to accept service. Morris Decl. Ex. 3. Several times over the next ten days, Highland sought confirmation from the Advisors' counsel as to whether he would accept service of the Subpoenas (as well as the subpoenas for Mr. Dondero and Mr. Norris). Morris Decl. Ex. 4. Advisors' counsel never provided a substantive response to the question of whether he would accept service. Consequently, Highland was forced to incur the cost of effectuating formal service of the Subpoenas. Adv. Docket Nos. 84-89.

18. Despite being in possession of the Subpoenas on March 15, 2022, the Advisors never accepted service and waited until April 8, 2022 (*i.e.*, one business day before trial) to file the Objection.

C. **The Waterhouse Deposition and the Postpetition Payments**

19. In addition to the Subpoenas, Highland anticipated eliciting testimony from Mr. Waterhouse concerning the Postpetition Payments. Because of scheduling issues, however, Mr. Waterhouse's deposition did not occur until March 28, 2022.[9]

20. During his deposition, Mr. Waterhouse testified that (i) he had received a single payment from NexPoint after the petition date in the amount of $90,000, (ii) he learned that NexPoint made other Postpetition Payments to Messrs. Ellington, Leventon, and Surgent, (iii) Brian Collins, Highland's then-Head of Human Resources, told Mr. Waterhouse about these Postpetition Payments, (iv) all of the Postpetition Payments were reflected in NexPoint's profit

---

[9] The scheduling order required all depositions to be completed by March 15, 2022. Adv. Docket No. 60. However, to accommodate Mr. Waterhouse's schedule, Highland (and the Advisors) agreed to move Mr. Waterhouse's deposition a number of times. Adv. Docket Nos. 51; 66; 69; 73.

7

and loss statement, and (v) he is unaware of any recipient of the Postpetition Payments informing any member of the Independent Board about the payments. *See generally* Morris Decl. Ex. 5.

21. Mr. Waterhouse testified that he could not remember or otherwise provide information concerning (i) the amounts paid by NexPoint to Messrs. Ellington, Leventon, and Surgent, (ii) the dates of the Postpetition Payments, or (iii) the purpose of the Postpetition Payments.

22. Based on the foregoing, the information sought in the Subpoenas (i) can only be uncovered if the Subpoenas are complied with and (ii)(a) is highly relevant, (b) presents no burden (it is a single document-request of limited scope), and (c) based on Mr. Waterhouse's testimony, is in NexPoint's possession, custody, and control.

23. The information sought in the Subpoenas is thus limited, seeking information related only to the Postpetition Payments, and will only be used (i) during the cross-examination of Mr. Waterhouse, Mr. Norris, and other potential witnesses called by the Advisors and/or (ii) for impeachment purposes.

**ARGUMENT**

24. The subpoenas were served pursuant to Rule 45 of the Federal Rules of Civil Procedure ("FRCP"), as incorporated by Federal Rule of Bankruptcy Procedure 9016. Highland agrees with the Advisors that a trial subpoena served pursuant to FRCP 45 generally cannot be used to procure discovery when the deadline for conducting discovery has passed. *See, e.g.*, *Hernandez v. City of Corpus Christi*, 2011 U.S. Dist. LEXIS 60452, at *2 (S.D. Tex. June 6, 2011). Highland also agrees that the deadline for serving written discovery was August 6, 2021.

25. However, a subpoena that seeks documents intended only "for cross-examination and impeachment" – like the ones at issue here – is properly a "trial" subpoena, not an improper "discovery" subpoena, and must be complied with. *Malmberg v. United States*, 2010 U.S. Dist.

8

LEXIS 28784, at *6-7 (N.D.N.Y. Mar. 24, 2010) (finding subpoenas were "trial subpoenas and not discovery subpoenas" because "Defendant intends to use the documents it has requested in these subpoenas for cross-examination and impeachment only . . ."); *see also Agapito v. AHDS Bagel, LLC*, 2018 U.S. Dist. LEXIS 83403, at *2 (S.D.N.Y. May 17, 2018) (same); *Armenian Assembly of Am., Inc. v. Cafesjian*, 2010 U.S. Dist. LEXIS 152687, *9-12 (D.D.C. Oct. 26, 2010) (same). As such, the Subpoenas are proper "trial" subpoenas, not late-served discovery, and there is no basis for the Advisors to avoid compliance.

26. The limitations on subpoenas cited by the Advisors, *see* Objection ¶ 4, "is confined to circumstances in which the subpoenaing party was, or should have been, aware of the existence of the subpoenaed documents or things before the discovery cutoff date but issues the subpoena after the discovery deadline has passed." 9 MOORE'S FEDERAL PRACTICE – CIVIL § 45.02 [4][a]; *see also Malmberg*, 2010 U.S. Dist. LEXIS 28784, at *7-8 (finding subpoena appropriate when information was only discovered in a deposition that took place after the close of discovery).

27. Consequently, even if the Subpoenas are determined to be "discovery" subpoenas, they are still appropriate. As set forth above, the Advisors first articulated the basis for their purported breach of contract claim, *i.e.*, the failure to provide "legal and compliance" services, on or after March 4, 2022, approximately seven months after the close of written discovery. Under these circumstances and in the interests of fairness and equity, Highland is entitled to documents related to the Postpetition Payments, and the Advisors should, therefore, be required to comply with the Subpoenas.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

| | |
|---|---|
| Dated: April 11, 2022 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Jeffrey N. Pomerantz (CA Bar No. 143717) (*pro hac vice*)<br>John A. Morris (NY Bar No. 266326) (*pro hac vice*)<br>Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)<br>Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>E-mail:  jpomerantz@pszjlaw.com<br>    jmorris@pszjlaw.com<br>    gdemo@pszjlaw.com<br>    hwinograd@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Melissa S. Hayward (Texas Bar No. 24044908)<br>Zachery Z. Annable (Texas Bar No. 24053075)<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br>Email:  MHayward@HaywardFirm.com<br>    ZAnnable@HaywardFirm.com<br><br>*Counsel for Highland Capital Management, L.P.* |